# EXHIBIT 3



IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)
GREATER ACCRA REGION
ACCRA – A.D. 2018

Suit. No. CM/RPC/0641/2018

Between:

| FORTUNE GLOBAL SHIPPING LOGISTIC LTD | … | Plaintiff/ Respondent |

And

| 1. THE VESSEL DLB SEA HORIZON | … | 1st Defendant/Applicant |
| 2. THE MASTER OF THE VESSEL DLB SEA HORIZON | … | 2nd Defendant/Applicant |
| 3. THE OWNERS OF THE VESSEL DLB SEA HORIZON | … | 3rd Defendant/Applicant |
| 4. CONSOLIDATED SHIPPING AGENCIES [CONSHIP] [AGENTS] | … | 4th Defendant |
| 5. RANGER SUBSEA NIGERIA LTD. | … | 5th Defendant |
| 6. SUNTX CAPITAL | … | 6th Defendant |
| 7. RANGER OFFSHORE USA INC | … | 7th Defendant |
| 8. RANGER INTERNATIONAL LTD | … | 8th Defendant |
| 9. TECHNIXS OILFIELD SUPPORT LTD | … | 9th Defendant |
| 10. WAG SPV 1 | … | 10th Defendant/Applicant |

---

NOTICE ON MOTION:
APPLICATION FOR (1) AN ORDER SETTING ASIDE THE WRIT OF SUMMONS
AND STATEMENT OF CLAIM AGAINST THE 1ST, 2ND, 3RD AND 10TH
DEFENDANTS; AND (2) AN ORDER DISCHARGING THE ORDER FOR
ARREST AND DETENTION OF THE 1ST DEFENDANT DATED 20 SEPTEMBER
2018
(Under C. I. 47, Ors. 2, 8 & 62;  Act 459, s. 20; Act 645, s. 446; and the Inherent
Jurisdiction of the Honourable Court)

TAKE NOTICE that this Honourable Court will be moved by Counsel for and on behalf of the Applicants herein, praying for (1) an order setting aside the Writ of Summons and Statement of Claim issued against the 1st, 2nd, 3rd, and 10th Defendants; and (2) a further order discharging the arrest and detention of the 1st Defendant ship upon the grounds set out in the accompanying affidavit and for any order(s) as the court may see fit.

Court to be moved on ~~WED~~ the 17TH day of October 2018 at 9 am or so soon thereafter as Counsel may be heard.

Dated at ENSafrica Ghana, Accra, this 4 October 2018.

David A. Asiedu
(Practising Certificate No. GAR 15720/18)
ENSafrica Ghana
Lawyers for the 1st, 2nd 3rd and 10th Defendants
**ENSafrica Ghana**

The Registrar,
Commercial Court,
Accra.

And to the above-named Plaintiff/Respondent or its lawyer, Dr. Kofi Mbiah Esq., Alliance Partners, SSNIT Pension House Tower Block (2nd Floor), Behind The National Theatre, Accra.

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)
GREATER ACCRA REGION
ACCRA – A.D. 2018

Suit. No. CM/RPC/0641/2018

Between:

FORTUNE GLOBAL SHIPPING LOGISTIC LTD    ...    Plaintiff/ Respondent

And

1.  THE VESSEL DLB SEA HORIZON    ...    1st Defendant/Applicant

2.  THE MASTER OF THE VESSEL
    DLB SEA HORIZON    ...    2nd Defendant/Applicant

3.  THE OWNERS OF THE VESSEL
    DLB SEA HORIZON    ...    3rd Defendant/Applicant

4.  CONSOLIDATED SHIPPING AGENCIES
    [CONSHIP] [AGENTS]    ...    4th Defendant

5.  RANGER SUBSEA NIGERIA LTD.    ...    5th Defendant

6.  SUNTX CAPITAL    ...    6th Defendant

7.  RANGER OFFSHORE USA INC    ...    7th Defendant

8.  RANGER INTERNATIONAL LTD    ...    8th Defendant

9.  TECHNIXS OILFIELD SUPPORT LTD    ...    9th Defendant

10. WAG SPV 1    ...    10th Defendant/Applicant

---

AFFIDAVIT OF THOMAS ATTOH IN SUPPORT OF MOTION

---

I Thomas Attoh, of H/No. B398/15, Asoredanho, Dansoman, Accra make oath and say as follows:

1.  I am the deponent hereto, and a law clerk at the law firm – ENSafrica Ghana – lawyers for the 1st, 2nd, 3rd and 10th Defendants/Applicants, and I have the authority

of the Applicants to depose to the matters contained in this affidavit which have come to my knowledge in the course of my work.

2. At the hearing of this application, Counsel shall seek leave of the Honourable Court to refer to all the processes filed in this matter as if they were part of this affidavit and had been sworn to on oath.

3. On 24 September 2018, an order dated 20 September 2018 for the arrest and detention of the 1st Defendant (DLB Sea Horizon) was served on the 1st Defendant, and also brought to the attention of 10th Defendant.

   **Exhibit TAA 1:**       A copy of the Order for Arrest and Detention dated 20 September 2018.

4. Upon reviewing Exhibit TAA 1, the 10th Defendant noticed that Exhibit TAA 1 indicated that "the vessel DLB Sea Horizon...was jointly owned by the 4th to 10th Defendants/Respondents".

5. The statement that the 1st Defendant was jointly owned by the 4th to 10th Defendants is incorrect; the said vessel is wholly owned by the 10th Defendant, and nobody else has any interest in the vessel. The 10th Defendant has ample evidence showing its sole ownership of the 1st Defendant vessel.

   **Exhibit TAA 2.1:**     A copy of Certificate of Ownership from the Panamanian Shipping Registry (the port of registry of DLB SEA HORIZON) showing that the vessel is wholly owned by the 10th Defendant.

   **Exhibit TAA 2.2:**     A legalised copy of a translation of Exhibit TAA 2.1

   **Exhibit TAA 2.3:**     Results of a search conducted at the Panamanian Maritime Authority by the law firm, Arias, Fabrega & Fabrega, showing that DLB SEA HORIZON is beneficially owned in respect of all shares by the 10th Defendant.

6. By virtue of its ownership and control of 1st Defendant vessel, the 10th Defendant fits the description of, and is for all practically purposes, the 2nd, and 3rd Defendants.

7. The 10th Defendant/Applicant forwarded Exhibit TAA 1 to its counsel to make enquiries as to the basis on which the 1st Defendant vessel had been arrested. This was because neither the 1st Defendant vessel nor the 10th Defendant had had any previous dealings with the Plaintiff, and both had not been served with any originating processes in the matter.

8. Upon enquiries made by their counsel, the 1st and 10th Defendants obtained copies of the court processes filed up to date in this matter.

| | |
|---|---|
| **Exhibit TAA 3:** | A copy of the Writ of Summons and Statement of Claim issued on 19 September 2018 at 11:55 am. |
| **Exhibit TAA 4:** | A copy of an application for leave to serve copies of Exhibit TAA 3 outside of the Jurisdiction filed on 19 September 2018 at 12:00 pm. |
| **Exhibit TAA 5:** | A copy of an application for the Arrest and Detention of the Vessel "DLB Sea Horizon" pursuant to Order 62 Rule 2 of C.I. 47 and Sections 442 and 446 of the Shipping Act, 2003 (Act 645) filed at 12:02 pm. |
| **Exhibit TAA 6:** | A certified true copy of an order of the Honourable Court dated 20 September 2018 permitting the service of Notice of the Writ of Summons and Statement of Claim on the Defendants out of the Jurisdiction |

9. Upon a review of Exhibits TAA 3, TAA 4 and TAA 5, the 10th Defendant/Applicant realised that the processes contained several alleged facts which are false and which could only have been made deliberately or with gross negligent.

10. Firstly, in paragraph 2 of Exhibit TAA 3, the Plaintiff claimed that the 3rd to 10th Defendants were joint owners of the vessel DLB Sea Horizon. This was a deliberate falsehood which was repeated on oath by the deponent in paragraph 4 of Exhibit TAA 5. As evidenced by Exhibits TAA 2.1, TAA 2.2 and TAA 2.3, the 1st Defendant vessel belongs solely to the 10th Defendant.

11. The Plaintiff and the deponent have not provided a single piece of evidence to substantiate this critical allegation they made to the Honourable Court, and which formed the basis of court orders.

12. Secondly, the Plaintiff claimed in paragraph 5 of Exhibit TAA3 that the 5th Defendant "representing all the joint owners of the Vessel DLB SEA HORIZON" had contracted the Plaintiff for the "supply of provisions, stores, necessaries, and to perform services...for the DLB SEA HORIZON." This statement was also a deliberate falsehood which was also repeated on oath by the deponent in paragraph 4 of Exhibit TAA5. But the 5th Defendant has never acted (or claimed to act) on behalf of, or as an agent of, the 1st Defendant vessel or its sole owner, the 10th Defendant. Therefore any contractual relationship between the Plaintiff and the 5th Defendant cannot lead to any liability for the 1st Defendant or its sole owner, the 10th Defendant.

13. The Plaintiff further claimed in Paragraph 5 of Exhibit TAA 3 that the goods and services it provided to the 5th Defendant, and for which a debt allegedly arose, was provided to the 1st Defendant vessel, which is another deliberate falsehood repeated under oath in paragraphs 4 and 7 of Exhibit TAA5.

14. Further, in paragraph 4 of the Affidavit in Support in Exhibit TAA 5, the deponent claimed that the "Defendants/Respondents acting as owners, ship managers and particularly as agents of the owners of DLB Sea Horizon..., [had] instructed the Plaintiff/Applicant via emails and or letters...". However, the Deponent did not attach these alleged documents, which are material in an application of this nature to show the link between the vessel being sued and/or its owner, and the alleged liability.

15. The deponent rather chose to attach as "Exhibit EA1", "copies of Invoices and debit Notes of expenses" incurred by the Plaintiff. None of the documents attached as part of "Exhibit EA1" made any reference, or showed any link, to the 1st Defendant, or 10th Defendant (the sole owner). The documents rather referred to other vessels, namely: "MV AZA EBI 1; MV ATLANTIC MANN; and MV SOLO"; and to an "Ango Pipeline Project".

16. Further, the deponent attached as Exhibit EA2 - "a letter dated 22 January 2018...addressed to the Managing Director of Fortune Global Shipping and Logistics Limited..." to "acknowledge" the indebtedness of Ranger Subsea Nig. Ltd, the 5th Defendant, to the Plaintiff.

17. A careful scrutiny of the said Exhibit EA2 shows that, just as with Exhibit EA1, it did not make any reference to the 1st Defendant vessel or the 10th Defendant (as sole owner), or show any link between the said Defendants and the alleged debt.

18. In Exhibit EA2, the 5th Defendant acknowledged owing "NGN 355,762,702.84 (Three Hundred Fifty Five Million, Seven Hundred Sixty Two Thousand and Eighty Seven Kobo only) and USD 1,913,621.81 (One Million, Nine Hundred Thirteen Thousand, Six Hundred Twenty One and Eighty One Cents) to the Plaintiff, and that is the same amount the Plaintiff claims in this action. The same exhibit also specifically indicated that states "the debt... [was] **for services in respect of Shell SPDC-FYIP, Chevron, Conoll, and Support projects**".

19. There is nothing in Exhibit EA2 to suggest that 5th Defendant acted as owner (or agent of the owner) of the 1st Defendant. Neither does the said Exhibit EA2 suggest even remotely that the services and supplies underlying the debt allegedly owed by the 5th Defendant were made to, or for the benefit of, the 1st Defendant or 10th Defendant (as sole owner).

20. In its enquiries and upon being provided with Exhibits TAA 3, TAA 4, TAA 5 and TAA 6, the Applicants came to understand that the Plaintiff, as a sub-contractor, provided certain services to the 5th Defendant pursuant to a Master Services Agreement dated 20 August 2014, between the Plaintiff (as sub-contractor) and the 5th Defendant (acting on its own accord and for its own benefit).

**Exhibit TAA 7:**     A copy of the Master Services Agreement dated 20 August 2014 between the Plaintiff and the 5th Defendant.

21. Exhibit TAA 7 provided that the Plaintiff would "perform work and/or provide services, equipment, machinery, material or supplies" to or for the 5th Defendant.

22. It is the understanding of the Applicants that the 5th Defendant's debt arose as a result of Exhibit TAA 7.

23. Exhibit TAA 7 makes no reference whatsoever to any of the Applicants, and the 5th Defendant is not linked in anyway in the said document to any of the Applicants. The Plaintiff suspiciously omitted to attach this very important document to its application to this Honourable Court.

24. It is the honest belief of the Applicants that this omission was mainly because Exhibit TAA 7 proves that the Plaintiff's claims against the Applicants are unfounded, and that the Plaintiff's only legitimate claim (if any) is against the 5th Defendant.

25. Also, the Plaintiff claimed that the "Defendants have refused to pay their outstanding indebtedness despite several repeated demands" and that "though the Defendants have failed to pay their indebtedness to the Plaintiff, they have not denied their indebtedness". This was another deliberate falsehood perpetrated on the Honourable Court.

26. At no point in time has the Plaintiff made any demand on the Applicants. And at no point in time have the Applicants made any contact with the Plaintiff, or even remotely acknowledged and/or admitted to any debt to it (which is why the Plaintiff has offered no proof of such interaction).

27. I am advised by counsel, and sincerely believe that, for a Writ of Summons to be issued in a maritime action against a vessel, there should be either an *in rem* claim against the vessel, or an *in personam* claim against a person who wholly beneficially owns the vessel.

28. I am further advised by counsel, and sincerely believe, that inasmuch as the Plaintiff had no *in rem* claim whatsoever against the 1st Defendant or an *in personam* claim against the 10th Defendant (at the time of the issue of the Writ of Summons) the necessary condition for the Honourable Court to be seised of maritime jurisdiction had not been met; therefore the issuance of the Writ of Summons as against the Applicants was wrongful.

29. I am further advised by counsel, and sincerely believe, that the entire basis of this action is a contractual claim by the Plaintiff against the 5th Defendant, which is not connected to the Applicants in any way.

30. I am further advised by counsel, and sincerely believe, that the issue of the Writ of Summons in this matter was wrongful because the Plaintiff failed to comply with mandatory statutory requirements.

31. I am further advised by counsel, and sincerely believe, that pursuant to the above depositions and the attached exhibits, this is a clear case where the Writ of Summons and the Statement of Claim ought to be set aside as against Applicants.

32. I am further advised by counsel, and sincerely believe, that based on the above depositions and the attached exhibits, the arrest and detention of the 1st Defendant vessel was wrongful, and same ought to be discharged immediately in the interest of justice.

33. At the hearing of this application, counsel for the Applicants shall address the Honourable Court in relation to the award of costs in favour of the Applicants in compensation for all the loss and expenses incurred as a result of the wrongful actions of the Plaintiff.

34. The Applicants therefore pray the Honourable Court for the orders endorsed on the motion paper and for any further order that this Honourable Court may deem fit.

35. In the circumstances, I swear to this affidavit in support of the instant application.

Sworn to in Accra, this          )
day of October 2018               )                          Deponent


Before me,


Commissioner for Oaths

JOHN AHETOH
COMMISSIONER FOR OATHS
P. O. BOX MP 1896
ACCRA

EXH·TAA 1

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)
ACCRA – A. D. 2018

SUIT NO: CM/RPC/0641/2018



FORTUNE GLOBAL SHIPPING & LOGISTIC LTD.   = PLAINTIFF

VS:

1. THE VESSEL DLB SEA HORIZON        =        DEFENDANTS
2. THE MASTER OF THE VESSEL DLB SEA HORIZON.
3. THE OWNERS OF THE VESSEL DLB SEA HORIZON
   & 7 OTHERS.

(SGD.)
SAMUEL K.A.ASIEDU.
JUSTICE OF THE HIGH COURT

### ORDER FOR ARREST AND DETENTION OF THE VESSEL DLB SEA HORIZON WITH IMO NUMBER 8759114

UPON READING the Affidavit of ELIJAH AMPONSAH, a litigation Clerk with Alliance Partners, located on the 2nd floor of the Tower Block of the SSNIT Pension House, Accra filed on the 19th day of September, 2018 in support of Motion Ex-parte for an Order to Arrest the Vessel DLB Sea Horizon with IMO Number 8759114 ;

AND UPON HEARING DR. KOFI MBIAH Esq., with him BENJAMIN QUORNOOH Esq., Counsel for and on behalf of the Plaintiff/Applicant herein.

IT IS HEREBY ORDERED that the Vessel "DLB Sea Horizon" the 1st Defendant /Respondent herein with IMO number 8759114 and jointly owned by the 4th to 10th Defendants/Respondents and now currently lying and berthed at the Naval Base, Sekondi/Takoradi within Jurisdiction of this Honourable Court be arrested forthwith till the Defendants/Respondents furnished security in the sum of USD$4,000,000.00.
The Security shall be in the form of either a deposit of USD$ 4,000,000.00 with the Registrar of the Court or a Bank Guarantee from a credible Ghanaian Bank pending the determination of the suit.

IT IS FURTHER ORDERED that the Commander of the Sekondi Naval Base is hereby directed to assist in securing the safe custody of the Vessel in question together with any appropriate or necessary document.
GIVEN UNDER MY HAND AND THE SEAL OF THE HIGH COURT OF JUSTICE, (COMMERCIAL DIVISION) ACCRA THIS 20TH DAY OF SEPTEMBER, 2018.

(SGD.)
MR. STEPEHN AFOTEY
REGISTRAR

THIS IS EXHIBIT / DOCUMENT MARKED ....T.A.A.... REFERRED TO THE AFFIDAVITS SWORN ATTACCRA THIS ....T.... DAY OF ....CE.... 20....
BY ...J. Attoh
BEFORE ME
COMMISSIONER FOR OATH

CERTIFIED TRUE COPY
............ REGISTRAR
HIGH COURT
COMMERCIAL DIVISION, LLB ACCRA





REPÚBLICA DE PANAMÁ / REPUBLIC OF PANAMA
AUTORIDAD MARITIMA DE PANAMÁ / PANAMA MARITIME AUTHORITY

DIRECCION GENERAL DE REGISTRO PUBLICO
DE PROPIEDAD DE NAVES
AUTORIDAD MARITIMA DE PANAMA

PAG.      1
// OTAM3    //

26/Sep/2018                 C E R T I F I C A

- QUE EN LA FICHA:      40278 DOC.      1931625
DE LA SECCION DE NAVES SE ENCUENTRA REGISTRADA LA NAVE
- SEA HORIZON
DESDE EL DIECIOCHO DE ENERO DE DOS MIL DIECISEIS ,

- QUE SU-S PROPIETARIOS ES/SON:
( 1 ) WAG SPV I, LLC.

- QUE A LA FECHA SE ENCUENTRA LIBRE DE HIPOTECAS Y GRAVAMENES ...

- QUE SU INSCRIPCION ESTA VIGENTE A LA FECHA DE EXPEDICION

QUE SU PROPIETARIO ACTUAL CONSTA INSCRITO BAJO DOCUMENTO 1936482 DESDE
EL 15 DE DICIEMBRE DE 2016.------------------------------------------------

EXPEDIDO Y FIRMADO EN LA PROVINCIA DE PANAMA , EL VEINTISEIS DE SEPTIEMBRE
DE DOS MIL DIECIOCHO A LAS 03:51:56,P.M.

NOTA:  ESTA CERTIFICACION PAGO DERECHOS
POR UN VALOR DE B/.      30.00
COMPROBANTE NO. 18 -  317338
NO. CERTIFICADO: NAVES - 004246
FECHA: Miercoles 26, Septiembre DE 2018
// OTAM3    //

CERTIFICADOR

THIS IS EXHIBIT / DOCUMENT
MARKED _____ REFERRED TO
IN THE AFFIDAVIT SWORN / AFFIRMED
THIS _____ DAY OF _____ 20 __

BY _____
BEFORE ME _____

COMMISSIONER FOR OATH

EXH-7AA 2.2

*TRANSLATION.-*

PANAMA
MARITIME AUTHORITY

(PANAMANIAN FLAG)

REPUBLIC OF PANAMA
PANAMA MARITIME AUTHORITY

PUBLIC REGISTRY OFFICE GENERAL DIRECTORATE
OF TITLES AND LIENS OF VESSELS
PANAMA MARITIME AUTHORITY



PAGE 1
// OTAM3 //

26/SEPT/2018          C E R T I F I E S

- THAT AT MICROJACKET: 40278   DOC.      1931625
OF THE NAVAL SECTION IS REGISTERED THE VESSEL
- SEA HORIZON
AS OF EIGHTEENTH JANUARY TWO THOUSAND SIXTEEN.

- THAT ITS OWNER-S IS/ARE:
  ( 1 ) WAG SPV I, LLC.

- THAT TO DATE IT IS FREE FROM MORTGAGES AND LIENS ...

- THAT ITS RECORDING IS IN FORCE AS OF ISSUANCE DATE

THAT ITS PRESENT OWNER IS RECORDED UNDER DOCUMENT 1936482 AS OF
15ᵀᴴ DECEMBER, 2016.-----------------------------------------------

ISSUED AND SIGNED IN THE PROVINCE OF PANAMA, ON TWENTY SIXTH SEPTEMBER
TWO THOUSAND EIGTHTEEN AT    03:51:56, P.M.

NOTE:  THIS CERTIFICATE HAS PAID DUTIES
       FOR AN AMOUNT OF B/. 30.00
       VOUCHER NO.  18 - 317338
       CERTIFICATE NO.: VESSELS - 004246
       DATE: WEDNESDAY 26ᵀᴴ SEPTEMBER, 2018
       // OTAM3 //

                              (ILLEGIBLE SIGNATURE)
                                   CERTIFIER

(SEAL - NAVAL PUBLIC REGISTRY GENERAL DIRECTORATE - PANAMA MARITIME
AUTHORITY - REPUBLIC OF PANAMA)

0005989

*THIS IS A TRUE TRANSLATION OF ITS ORIGINAL IN SPANISH.*

*VILMA V. DE DURLING - CERTIFIED PUBLIC TRANSLATOR -*

*RESOLUTION No.224*

*PANAMA, 26ᵀᴴ SEPTEMBER, 2018.*

**VILMA V. DE DURLING**
Intérprete Público Autorizado
Céd. 8-111-183
Lic. No. 224



**ARIAS, FABREGA & FABREGA**

**SHIPPING DEPARTMENT**

**SEARCHES**

THIS IS EXHIBIT / DOCUMENT
MARKED...........................REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS.............DAY OF......OCT..20....

BY.........................................
BEFORE ME

COMMISSIONER FOR OATH

**VESSEL: SEA HORIZON**

**MERCHANT MARINE ADMINISTRATION**

| Name | Sea Horizon |
|---|---|
| Former Name | Sea Horizon |
| Owner | WAG SPV I, LLC |
| Call Signs | 3EMF6 |
| MMSI | 374 152 000 |
| IMO No. | 8759114 |
| Previous Nationality | Vanuatu |
| Patente of Navigation No. | 47664-16-B |
| Expiry date of the Patente | March 8, 2022 |
| Radio License No. | 12088-CH |
| Expiry date of the Radio License | March 8, 2022 |
| Place of Construction | EHIME, JAPAN / SINGAPORE (R) |
| Year of Construction | 1977 / 2001 (R) |
| Builders | Sumitomo Heavy Industries, Ltd. / Kwong Soon Shipyard (R) |
| Legal Representative | Pitty Legal Bureau |
| Radio Accounting Entity | Mackay Communications, Inc. (US-02) |
| Hull Material | Steel |
| Length | 105.60 MTS. |
| Width | 30.00 MTS. |
| Depth | 7.80 MTS. |
| Gross Tonnage | 8,867.00 |
| Net Tonnage | 2,660.00 |
| Class | Pipelaying Derrick Barge |
| Type and No. of Engines | |
| Number and Type of Cylinders | |
| Name of manufacturer of Engines | Non-Self Propelled |
| Speed of the vessel | |
| Horse Power | |
| Tax Statutes / Pending Fines | Annual Tax and Tasas paid until 31 December 2018. |
| Restrictions | Without Restrictions |

| ISM / ISPS  CERTIFICATES | VALIDITY | COMPANY |
|---|---|---|
| DOC (expiration) | | |
| SMC (expiration) | N/A | N/A |
| CSR  No. (issuance) | | |
| ISSC (expiration) | | |

EXH·TAA 3

1158590

19-9-18

REPUBLIC OF GHANA

# WRIT OF SUMMONS

(Order 2 rule (1))

WRIT ISSUED FROM........................................................ SUIT No. ...........

## IN THE HIGH/CIRCUIT COURT OF JUSTICE

.................COMMERCIAL COURT DIVISION, ACCRA.................

BETWEEN

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED
*15, Fatai Irawo Street,*
*Ajao Estate, Lagos State, Nigeria*                              **PLAINTIFF**

AND

THIS IS EXHIBIT / DOCUMENT
MARKED ....... REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS .......DAY OF.......20....

BY........ T. Attoh
BEFORE ME

COMMISSIONER FOR OATH

1.  THE VESSEL DLB SEA HORIZON
2.  THE MASTER OF THE VESSEL DLB
    SEA HORIZON
3.  THE OWNERS OF THE VESSEL DLB
    SEA HORIZON
4.  CONSOLIDATED SHIPPING AGENCIES
    [CONSHIP] [AGENTS]
    *Plot Nos. 21/22 Commercial Warehouse Area*
    *P. O. Box CT 2491,*
    *Accra - Ghana.*
5.  RANGER SUBSEA NIGERIA LTD
    *D93 Landbridge Avenue*
    *Oniru Estate, Victoria Island,*
    *Lagos State, Nigeria.*
6.  SUNTX CAPITAL
    *Two Lincoln Centre Suite 1000,*
    *5420 LBJ Freeway,*
    *Dallas Texas, 7520, USA.*                              **DEFENDANTS**
7.  RANGER OFFSHORE USA INC
    *10370 Richmond Avenue,*
    *Suite 1000, Houston Texas 77042, UAS.*
8.  RANGER INTERNATIONAL LTD
    *10370 Richmond Avenue,*
    *Suite 1000, Houston Texas 77042, UAS.*
9.  TECHNIXS OILFIELD SUPPORT LTD
    *Technixs Base Beside NBTC,*
    *Ovwian Off Warri Aladja Expressway,*
    *Ovwian Warri, Delta State, Nigeria.*
10. WAG SPV 1
    *5420 LBJ Freeway 1000,*
    *Dallas Texas, USA.*





IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL COURT DIVISION
ACCRA   AD – 2018

BETWEEN                                                    SUIT NO.

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED                       **PLAINTIFF / APPLICANT**
*15, Fatai Irawo Street,*
*Ajao Estate, Lagos State,*
*Nigeria.*

AND

1.   THE VESSEL DLB SEA HORIZON
2.   THE MASTER OF THE VESSEL DLB
     SEA HORIZON
3.   THE OWNERS OF THE VESSEL DLB
     SEA HORIZON
4.   CONSOLIDATED SHIPPING AGENCIES
     [CONSHIP] [AGENTS]
     *Plot Nos. 21/22 Commercial Warehouse Area*
     *P. O. Box CT 2491,*
     *Accra – Ghana.*
5.   RANGER SUBSEA NIGERIA LTD
     *D93 Landbridge Avenue*
     *Oniru Estate, Victoria Island,*
     *Lagos State, Nigeria.*
6.   SUNTX CAPITAL
     *Two Lincoln Centre Suite 1000,*
     *5420 LBJ Freeway,*
     *Dallas Texas 7520, USA.*
7.   RANGER OFFSHORE USA INC
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, USA.*
8.   RANGER INTERNATIONAL LTD
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, USA.*
9.   TECHNIXS OILFIELD SUPPORT LTD
     *Technixs Base Beside NBTC,*
     *Ovwian Off Warri Aladja Expressway,*
     *Ovwian Warri, Delta State, Nigeria.*
10.  WAG SPV 1
     *5420 LBJ Freeway 1000,*
     *Dallas Texas, USA.*

DEFENDANT/RESPONDENTS



THIS IS EXHIBIT / DOCUMENT
MARKED........................REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS............DAY OF..........20....
BY.................................................
BEFORE ME
........................................................
COMMISSIONER FOR OATH

STATEMENT OF CLAIM

1. The Plaintiffs are limited liability company limited registered under the laws of the Federal Republic of Nigeria and engaged in the business of logistics handling and freight forwarding, ship agents and chandlers and carry on business from their 15, Fatai Irawo Street, Ajao Estate, Lagos State, Nigeria.

2. The 1st Defendant is a Vessel with IMO registration number 875-9114 which is jointly owned by the 3rd to 10th Defendants which said vessel is currently lying and berth at the Naval Base, Sekondi/Takoradi within the jurisdiction of this honourable court.

3. The 2nd Defendant is the master of the 1st Defendant.

4. The 4th Defendant is the Agents of the 1st Defendant in Ghana.

5. Plaintiff avers that at all times material to this suit the 5th Defendant representing all the joint owners of the Vessel DLB SEA HORIZON, has on various occasions contracted the Plaintiff for the supply of provisions, stores, necessaries and to perform such services as pilotage, car hire and other technical services including provision of sundry chandelling services for the DLB SEA HORIZON. Plaintiff shall at the trial rely on invoices and debit notes of expenses incurred by the Plaintiff on the instructions of the 4th Defendant in respect of the DLB SEA HORIZON.

6. Plaintiff avers that as at the time of filing this suit the 5th to 10th Defendants are still indebted to the Plaintiff on account of the services rendered to th DLB SEA HORIZON [5th to 10th Defendants] to the tune of N355,762,702.87 [Three Hundred Fifty Five Million, Seven Hundred Sixty Two Thousand Seven Hundred Two Nigerian Naira and Eighty Seven Kobo only] and USD 1,913,621.81 [One Million, Nine Hundred Thirteen Thousand, Six Hundred Twenty One and Eighty One Cents] .

7. Plaintiff avers that the Defendants have refused to pay their outstanding indebtedness despite several repeated demands made by them [Plaintiff]. Plaintiff shall at the trial rely on letters of demand served on the 5th Defendant.

8. Plaintiff avers that though the Defendants have failed to pay their indebtedness to the Plaintiff, they have not denied their indebtedness have always acknowledged their indebtedness to the Plaintiff. Plaintiff shall at the trial rely on Defendants letter of 22nd Janury, 2018 in which the Defendants confirmed and acknowledged their indebtedness of N355,762,702.87 and U$D 1,913,621.81  to the Plaintiff.

9.   Plaintiff avers that the Defendants having failed to settle their indebtedness, and the vessel to which the Plaintiffs supplied and provided the goods and services is now berthed and lying at the Naval Base, Sekondi/Takoradi within the jurisdiction of this court, the Plaintiff are by the practice and procedure of Admiralty Practice, entitled to apply for the arrest of the vessel DLB SEA HORIZON within the jurisdiction of this court as security for the claim herein.

10.   WHEREFORE the Plaintiff claims jointly and severally against the 5th to 10th Defendants as follows:-

1.   RECOVERY of the sum of N355,762,702.87 [Three Hundred Fifty Five Million, Seven Hundred Sixty-Two Thousand Seven Hundred Two Nigerian Naira  Eighty Seven Kobo] jointly and severally against the 5th to 10th Defendants being money due from the 5th to 10th Defendants to the Plaintiff for the supply of goods and services such as provision, necessaries, pilotage, car-hire chandelling services provided by the Plaintiff to the 1st Defendant vessel "DLB SEA HORIZON" owned jointly by the 5th to 10th Defendants.

2.   Interest on the sum of N355,762,702.87 at the prevailing commercial bank rate from 15th November, 2015 till the whole sum together with the interest is fully paid.

3.   RECOVERY of the sum of USD 1,913,621.81 [One Million, Nine Hundred Thirteen Thousand, Six Hundred Twenty-One Dollars Eighty-One Cents] jointly and severally against the 5th to 10th Defendant for the supply of goods and services as stated in paragraph (1) above .

4.   Interest on the sum of U$D1,913,621.81 at the prevailing commercial bank rate from 15th November, 2015 till the whole sum together with interest is fully paid.

5.   Legal Cost of $25,000 for the Plaintiff's Solicitors.

6.   GH¢50,000 General Damages against the 5th to 10th Defendants for breach of contract.

7.   Any other Consequential or other orders that this honourable court may deem fit to make in the circumstances of this case.

Dated at Alliance Partners, Accra, this _____ day of September, 2018



Dr. Kofi Mbiah
License No. *GAR 15128/18*
Plaintiff/Applicant's Solicitor
Alliance Partners
SSNIT Pension House
Tower Block [2nd & 4th Floor], Accra.

The Registrar,
High Court,
Commercial Court Division,
Accra.

FOR SERVICE ON

1.   THE VESSEL DLB SEA HORIZON
2.   THE MASTER OF THE VESSEL DLD SEA HORIZON
3.   THE OWNERS OF THE VESSEL DLB SEA HORIZON

4.   CONSOLIDATED SHIPPING AGENCIES [CONSHIP] [AGENTS]
     Plot Nos. 21/22 Commercial Warehouse Area,
     P. O. Box CT 2491,
     Accra – Ghana.

5.   RANGER SUBSEA NIGERIA LTD
     D93 Landbridge Avenue,
     Oniru Estate, Victoria Island,
     Lagos State, Nigeria.

6.   SUNTX CAPITAL
     Two Lincoln Centre Suite 1000,
     5420 LBJ Freeway,
     Dallas Texas 7520, USA.

7.   RANGER OFFSHORE USA INC
     10370 Richmond Avenue,
     Suite 1000, Houston Texas 77042, USA.

8.   RANGER INTERNATIONAL LTD
     10370 Richmond Avenue,
     Suite 1000, Houston Texas 77042, USA.

9.   TECHNIXS OILFIELD SUPPORT LTD
     Technix Base Beside NBTC,
     Ovwian Off Warri Aladja, Expressway,
     Ovwian Warri, Delta State, Nigeria.

10.  WAG SPV 1
     5420 LBJ Freeway 1000,
     Dallas Texas, USA.

**EXH-TAA4**

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL COURT DIVISION
ACCRA  AD – 2018

BETWEEN

SUIT NO.

CM/RPC/0641/2018

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED
*15, Fatai Irawo Street,*
*Ajao Estate, Lagos State, Nigeria.*          ---- PLAINTIFF/APPLICANT

AND

1.   THE VESSEL DLB SEA HORIZON
2.   THE MASTER OF THE VESSEL DLB
     SEA HORIZON
3.   THE OWNERS OF THE VESSEL DLB
     SEA HORIZON
4.   CONSOLIDATED SHIPPING AGENCIES
     [CONSHIP] [AGENTS]
     *Plot Nos. 21/22 Commercial Warehouse Area*
     *P. O. Box CT 2491,*
     *Accra – Ghana.*
5.   RANGER SUBSEA NIGERIA LTD
     *D93 Landbridge Avenue*
     *Oniru Estate, Victoria Island,*
     *Lagos State, Nigeria.*
6.   SUNTX CAPITAL
     *Two Lincoln Centre Suite 1000,*
     *5420 LBJ Freeway,*
     *Dallas Texas 7520, USA.*
7.   RANGER OFFSHORE USA INC
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, UAS.*
8.   RANGER INTERNATIONAL LTD
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, UAS.*
9.   TECHNIXS OILFIELD SUPPORT LTD
     *Technixs Base Beside NBTC,*
     *Ovwian Off Warri Aladja Expressway,*
     *Ovwian Warri, Delta State, Nigeria.*
10.  WAG SPV 1
     *5420 LBJ Freeway 1000,*
     *Dallas Texas, USA.*

DEFENDANT/RESPONDENTS

THIS IS EXHIBIT / DOCUMENT
MARKED ............... REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS ............ DAY OF ............ 20....

BY ...................................
BEFORE ME

..............................................
COMMISSIONER FOR OATH

IN THE MATTER OF THE ARREST AND DETENTION OF THE VESSEL "DLB
SEA HORIZON" WITH REGISTRATION NUMBER 875-9114

*Page 1 of 2*

MOTION EX-PARTE FOR LEAVE TO SERVE COPIES OF THE WRIT OF SUMMONS OUTSIDE THE JURISDICTION PURSUANT TO ORDER 8 OF [CI47]

TAKE NOTICE that this Honourable Court shall be moved on _Thur_ the _20th_ day of _Sept_, 2018 at 9 O' clock in the forenoon or so soon thereafter as Counsel for the Plaintiff/Applicant may be heard for:-

1.  *AN ORDER for leave to serve the NOTICE OF WRIT OF SUMMONS together with the Statement of Claim attached, the Court Order and all subsequent court processes in this suit out of the jurisdiction of this Honourable Court on the 5th to 10th Defendant/Respondents, joint owners of the vessel DLB SEA HORIZON who ordinarily reside outside the Jurisdiction of this court in the United States of America and Nigeria.*

2.  *AN ORDER that the Notice of Writ of Summons together with the Statement of Claim and Court Order be served on the 5th to 10th Defendant/Respondents through DHL Courier Services.*

And for such further order or other orders as this Honourable Court may deem fit to make in the circumstances.

Dated at Alliance Partners, Accra, this _19_ day of SEPTEMBER, 2018

-----------------------------------
Dr. Kofi Mbiah
License No. **GAR 15128/18**
Plaintiff/Applicant's Solicitor

The Registrar,
High Court,
Commercial Court Division,
Accra.

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL COURT DIVISION
ACCRA   AD – 2018

BETWEEN                                                          SUIT NO.

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED                    ----           PLAINTIFF/APPLICANT
15, *Fatai Irawo Street,*
*Ajao Estate, Lagos State, Nigeria.*

AND

1.   THE VESSEL DLB SEA HORIZON
2.   THE MASTER OF THE VESSEL DLB
     SEA HORIZON
3.   THE OWNERS OF THE VESSEL DLB
     SEA HORIZON
4.   CONSOLIDATED SHIPPING AGENCIES
     [CONSHIP] [AGENTS]
     *Plot Nos. 21/22 Commercial Warehouse Area*
     *P. O. Box CT 2491,*
     *Accra – Ghana.*
5.   RANGER SUBSEA NIGERIA LTD
     *D93 Landbridge Avenue*
     *Oniru Estate, Victoria Island,*
     *Lagos State, Nigeria.*
6.   SUNTX CAPITAL
     *Two Lincoln Centre Suite 1000,*
     *5420 LBJ Freeway,*
     *Dallas Texas 7520, USA.*
7.   RANGER OFFSHORE USA INC
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, USA.*
8.   RANGER INTERNATIONAL LTD
     *10370 Richmond Avenue,*
     *Suite 1000, Houston Texas 77042, USA.*
9.   TECHNIXS OILFIELD SUPPORT LTD
     *Technixs Base Beside NBTC,*
     *Ovwian Off Warri Aladja Expressway,*
     *Ovwian Warri, Delta State, Nigeria.*
10.  WAG SPV 1
     *5420 LBJ Freeway 1000,*
     *Dallas Texas, USA.*

DEFENDANT/RESPONDENTS

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SERVICE OF NOTICE OF
WRIT OUTSIDE THE JURISDICTION

I, Elijah Oppong Amponsah, a Ghanaina male and Litigation Executive with Alliance Partners, solicitors to the Plaintiff of SSNIT Pension House, Tower Block, Accra do hereby make oath and say as follows:-

1. That I am the deponent herein, very familiar with the facts of this suit by virtue of my position and have the authority of both my employers and the Plaintiff to swear to this affidavit.

2. That at the hearing of this application Counsel shall seek leave to refer to and rely on all processes so far filed in this suit as if same has been incorporated in this affidavit and sworn to upon oath.

3. That the Plaintiff have filed a suit against the Defendants claiming jointly and severally against them for the reliefs stated in the Writ.

4. That I am informed by counsel to the Plaintiff and I verily believe that the 5th to 10th Defendants ordinarily resides outside the jurisdiction of Ghana.

5. That in view of the above it is necessary for the Plaintiff to obtain leave of this court to serve the 5th to 10th Defendant with Notice of the Writ of Summons with Statement of Claim attached and the Court Order on them outside the jurisdiction of this court .

6. That the Plaintiff intends to serve the court processes on the 5th to 10th Defendants by Airmail through DHL COURIED SERVICES.

7. That I am informed by Counsel to the Plaintiff that this court is the "Forum Convenient" since the vessel is now lying and berthed at the Naval Base, Sekondi/Takoradi within the jurisdiction.

8. WHEREFORE I swear to this affidavit in good faith.

_____
DEPONENT

Sworn to at Accra, this 19th
day of Sept , 2018

BEFORE ME

SAMUEL KWAKPO ADDO
COMMISSIONER FOR UATH
COMMISSIONER FOR OATHS
MAMPROBI-ACCRA
1277780004/0246385304

EXH. TAA5

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL COURT DIVISION
ACCRA  AD – 2018

BETWEEN

SUIT NO.

CM/RPC/0641/2018

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED
*15, Fatai Irawo Street,*
*Ajao Estate, Lagos State,*
*Nigeria.*

---- 	PLAINTIFF/APPLICANT

19-9-18
12:02

AND

1. THE VESSEL DLB SEA HORIZON
2. THE MASTER OF THE VESSEL DLB
   SEA HORIZON
3. THE OWNERS OF THE VESSEL DLB
   SEA HORIZON
4. CONSOLIDATED SHIPPING AGENCIES
   [CONSHIP] [AGENTS]
   *Plot Nos. 21/22 Commercial Warehouse Area*
   *P. O. Box CT 2491,*
   *Accra – Ghana.*
5. RANGER SUBSEA NIGERIA LTD
   *D93 Landbridge Avenue*
   *Oniru Estate, Victoria Island,*
   *Lagos State, Nigeria.*
6. SUNTX CAPITAL
   *Two Lincoln Centre Suite 1000,*
   *5420 LBJ Freeway,*
   *Dallas Texas 7520, USA.*
7. RANGER OFFSHORE USA INC
   *10370 Richmond Avenue,*
   *Suite 1000, Houston Texas 77042, UAS.*
8. RANGER INTERNATIONAL LTD
   *10370 Richmond Avenue,*
   *Suite 1000, Houston Texas 77042, UAS.*
9. TECHNIXS OILFIELD SUPPORT LTD
   *Technixs Base Beside NBTC,*
   *Ovwian Off Warri Aladja Expressway,*
   *Ovwian Warri, Delta State, Nigeria.*
10. WAG SPV 1
    *5420 LBJ Freeway 1000,*
    *Dallas Texas, USA.*

THIS IS EXHIBIT / DOCUMENT
MARKED ........ REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS ........ DAY OF ........ 20 ....

BY
BEFORE ME
COMMISSIONER FOR OATH

DEFENDANT/RESPONDENTS

Ecobank GH. LTD.
RECEIVED
19 SEP 2018
TELLER
JUDICIALSERVICE

*Page 1 of 3*

Mol/Aff - 50
Sol. - 30

IN THE MATTER OF THE ARREST AND DETENTION OF THE VESSEL DLB
SEA HORIZON WITH IMO NUMBER 8759114

IN THE MATTER OF AN APPLICATION EX-PARTE BROUGHT PURSUANT TO
ORDER 62 RULE 2 OF THE HIGH COURT [CIVIL PRICEDURE] RULES, 2004
[CI47] AND SECTIONS 442 AND 446 OF THE SHIPPING ACT, 2003 ACT 645

TAKE NOTICE that this Honourable Court shall be moved on ~~TRUE~~ the
~~20th~~ day of ~~SEPT~~_____, 2018 at the hour of 9 O' clock or so soon
thereafter as Counsel on behalf of the Plaintiff/Applicant may be heard for:-

1. *AN ORDER for the Arrest and Detention of the VESSEL "DLB SEA
   HORIZONI" the 1st Defendant/Respondent herein with IMO number
   8759114 and jointly owned by the 4th to 10th Defendant/
   Respondnets and now currently lying and berthed at the Naval
   Base, Sekondi/Takoradi within the jurisdiction of this Honourable
   Court for non-payment by the 4th to 10th Defendant/Respondents
   to the Plaintiff/Applicant of a total sum of N355,762,702.87 [Three
   Hundred Fifty Five Million, Seven Hundred Sixty Two Thousand
   Seven Hundred Two Nigerian Naira and Eighty Seven Kobo only]
   and USD 1,913,621.81 [One Million, Nine Hundred Thirteen
   Thousand, Six Hundred Twenty One Dollars and Eighty One Cents]
   being for the supply goods and services in the nature provisions,
   pilotage, car hire, chandelling services etc etc for the operations of
   the 1st Defendant/Respondent which is jointly owned by the 4th to
   10th Defendant/Respondents.*

2. *A CONSEQUENTIAL ORDER directed at the Commander of the
   Naval Base to help secure and keep in safe custody, all shipping
   documents in respect of the aforesaid vessel pending provision of a
   satisfactory security and/or final determination of all matters in
   controversy between the parties.*

And for such further and/or other orders as the court may deem fit to make
in the circumstances.

Dated at Alliance Partners, Accra, this __19__ day of September, 2018.



_____
Dr. Kofi Mbiah
License No. *GAR 15128/18*
Plaintiff/Applicant's Solicitor

The Registrar,
High Court,
Commercial Court Division,
Accra.

IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
COMMERCIAL COURT DIVISION
ACCRA   AD – 2018

SUIT NO.

BETWEEN

FORTUNE GLOBAL SHIPPING
AND LOGISTICS LIMITED          ----        PLAINTIFF/APPLICANT
*15, Fatai Irawo Street,*
*Ajao Estate, Lagos State,*
*Nigeria.*



AND

1.  THE VESSEL DLB SEA HORIZON
2.  THE MASTER OF THE VESSEL DLB
    SEA HORIZON
3.  THE OWNERS OF THE VESSEL DLB
    SEA HORIZON
4.  CONSOLIDATED SHIPPING AGENCIES
    [CONSHIP] [AGENTS]
    *Plot Nos. 21/22 Commercial Warehouse Area*
    *P. O. Box CT 2491,*
    *Accra – Ghana.*
5.  RANGER SUBSEA NIGERIA LTD
    *D93 Landbridge Avenue*
    *Oniru Estate, Victoria Island,*
    *Lagos State, Nigeria.*
6.  SUNTX CAPITAL
    *Two Lincoln Centre Suite 1000,*
    *5420 LBJ Freeway,*
    *Dallas Texas 7520, USA.*
7.  RANGER OFFSHORE USA INC              DEFENDANT/RESPONDENTS
    *10370 Richmond Avenue,*
    *Suite 1000, Houston Texas 77042, UAS.*
8.  RANGER INTERNATIONAL LTD
    *10370 Richmond Avenue,*
    *Suite 1000, Houston Texas 77042, UAS.*
9.  TECHNIXS OILFIELD SUPPORT LTD
    *Technixs Base Beside NBTC,*
    *Ovwian Off Warri Aladja Expressway,*
    *Ovwian Warri, Delta State, Nigeria.*
10. WAG SPV 1
    *5420 LBJ Freeway 1000,*
    *Dallas Texas, USA.*

IN THE MATTER OF THE ARREST AND DETENTION OF THE VESSEL DLB SEA HORIZON WITH IMO NUMBER 8759114

---

AFFIDAVIT IN SUPPORT OF APPLICATION FOR THE ARREST OF THE DLB SEA HORIZON WITH IMO NUMBER 8759114

---

I Elijah Amponsah, a Litigation Clerk with Alliance Partners, located on the 2nd Floor of the Tower Block of the SSNIT Pension House, Accra do hereby make oath and say as follows:-

1.  That I have the consent and authority of the Plaintiffs to swear to this affidavit on its behalf.

2.  That I am familiar with the facts of this suit.

3.  That the Plaintiff is a limited liability company registered under the laws of the Federal Republic of Nigeria and engaged in the business of logistics handling and freight forwarding, ship agents and chandlers with its office at 15 FATAI IRAWO STREET AJAO ESTATE, LAGOS.

4.  That at various times and on various occasions the Defendant/Respondents acting as owners, ship managers and particularly as agents of the owners of DLB Sea Horizon, an oil services and pipelay barge, instructed the Plaintiff/Applicant via emails and or letters for the supply of provision, stores, necessaries and to perform such services as pilotage, car hire and other technical services including the provision of sundry chandelling services. Attached herewith and marked ***Exhibit EA1*** are copies of Invoices and debit Notes of expenses incurred by Fortune Global Shipping and Logistics limited on the instructions of Ranger Subsea Nigeria Limited. 4th Defendant/Respondent herein totaling NGN 355,762,702.87 [Three Hundred Fifty Five Million, Seven Hundred Sixty Two Thousand Seven Hundred Two Nigerian Naira and Eighty Seven Kobo only] and USD 1,913,621.81 [One Million, Nine Hundred Thirteen Thousand, Six Hundred Twenty One and Eight One Cents].

5.  That by a letter dated 22nd January, 2018 marked as *Exhibit EA2* addressed to the Managing Director Fortune Global Shipping and Logistics Limited, the Defendant/Respondent confirmed and acknowledged its indebtedness to the Plaintiff/Applicant in the sum of NGN 355,762,702.87 [Three Hundred Fifty Five Million, Seven Hundred Sixty Two Thousand Seven Hundred Two Nigerian Naira and Eighty Seven Kobo only] and USD 1,913,621.81 [One Million, Nine Hundred Thirteen Thousand, Six Hundred Twenty One and Eight One Cents].

6.  That the said letter acknowledging the indebtedness to the Plaintiff/Applicant, stated that it was in respect of services performed for Ranger Subsea Nigeria Limited and intended to assure the Plaintiff/Applicant that the receivables are irrevocable and payable as committed.

7.  That due to the Defendant/ Respondents failure and or default to pay for the goods and services supplied to them, the Plaintiff sent various demand notices two of which are attached herewith and marked as Exhibit **EA3** dated 19th December 2017 and 11th July 2018

8.  That in terms of the practice and procedure of Admiralty, the Plaintiff/Applicant herein is entitled to arrest the vessel DLB Sea Horizon which is within the jurisdiction of this Honourable Court as security for its claim.

9.  That I am aware that upon an order for the arrest and detention of the vessel, the 5th, 6th 7th, 8th , 9th and 10th Defendants being Master, Manager and Owners and Agents respectively of the vessel DLB Sea Horizon and their assigns or representatives who reside outside the jurisdiction of this court will enter appearance or post a satisfactory First Class Guarantee or obtain a letter of undertaking from an International Group Protection and Indemnity Club or make payment into an escrow account held by London Lawyers to secure release of the vessel.

10. That this application is to ensure the posting of security in favour of the Plaintiff/Applicant.

11. That if the order for the arrest and detention is not granted the vessel will sail away and out of the jurisdiction of the honourable court and the Plaintiff/Applicant would suffer immeasurable and irreparable loss.

12. That the Plaintiff/Applicant hereby gives an undertaking as to damages in favour of the Defendant/Respondents to indemnity them for any loss/damage to be suffered if at the end it turns out that this application is frivolous incompetent and ought not to have been brought in the first place.

13. That the interests of justice would be unreservedly served if this application is granted in favour of the Plaintiff/Applicant.

14. That I swear to this affidavit in good faith.

_____

DEPONENT

Sworn to at Accra, this _Mol_
day of ___Sept___, 2018

BEFORE ME

SAMUEL KPAKPO ADDO
COMMISSIONER FOR OATHS
COMMISSIONER FOR OATHS
MAMPROBI-ACCRA
(27778000A/024835301)





**INVOICE**

NO: FGS/RANGLAY.0009Z
DATE: 13/11/2015
P.O: NO. 60119-8

**Bill to:**
Name: Ranger Subsea Nigeria Limited
Address: D93 Landbridge Avenue
Oniru Estate
City: Victoria Island Lagos Nigeria

**Deliver to:**
Name: Ranger Subsea Nigeria Limited
Address: D93 Landbridge Avenue
Oniru Estate
City: Victoria Island Lagos Nigeria

Amount in Words: One Hundred and Sixty Nine Thousand, One Hundred and Twenty Five Dollars, Seventy Two Cents

Payment Details

EX EA1

**FortuneGlobal**
RC:662247
15-FATAI ARAWO STREET
AJAO ESTATE, LAGOS
Website: www.ffglobaloilrigblog.com

NO:FGS/RANCOIL/0163
DATE: 28/06/2016
PO NO: 70481

## INVOICE

Bill to:

Name: Ranger Oubsga
Nigeria Limited
Address: DBS Landbridge
Avenue, Oniru Estate

City: Victoria Island,
Lagos

CONDI. PROJECT Material supply

| S/N | DESCRIPTION | UNIT | QTY | UNIT COST | AMOUNT (NGN) |
|---|---|---|---|---|---|
| 1 | PLATE, MID. STEEL, ASTM A105N SIZE... | EACH | 1 | 533,250.00 | 533,250.00 |
| 2 | PIPE, CARBON STEEL, SCH. 40, SIZE 2" DIA. 20 FT LENGTH | EACH | 2 | 27,000.00 | 54,000.00 |
| 3 | COUPLING, (COLLAR) STEEL, A105N, B16, SIZE 2", NPT, 6000# A105N, B16 (FEMALE NPT BOTH ENDS) | EACH | 4 | 13,500.00 | 54,000.00 |
| 4 | PLUG, STEEL, HEXHEAD, A105N, B16, SIZE 2½, NPT, 6000# | EACH | 5 | 11,000.00 | 55,000.00 |
| 5 | WELD OLET, SIZE 6" x 2", MOPL, CLASS 6000, ASTM A105 | EACH | 2 | 20,250.00 | 40,500.00 |
| 6 | BALL VALVE, STEEL, SODF-GL, SIZE 2" x 6000#, NPT, W/LEVER TYPE HANDLE, FEMALE NPT BOTH ENDS) | EACH | 6 | 40,000.00 | 240,000.00 |
| 7 | Delivery Cost | Each | 1 | 45,000.00 | 45,000.00 |
| 8 | RGSL 10% Markup | | | | 97,675.00 |
| | | | VAT ON MARKUP | | 4,883.75 |
| | | | TOTAL | | NGN 1,124,308.75 |



UNIVERSAL SHIPPING AND LOGISTICS LIMITED

DATE: 10-Jun-2016
VESSEL: Hercules Jetty - WAFI
Project: Argo Pipeline Project
MANIFEST 397

**MANIFEST OUTGOING**

| # | Qty | Unit | Description | | |
|---|-----|------|-------------|---|---|
| 1 | 5 | PCS | ACETYLENE CUTTING TIP BRAND: VICTOR, SIZE 1-3-101, TYN:0330-0005 *RECEIVED SIZE 1-3-101* | 70076 | RECEIVED SIZE2,BUT RECEIVED |
| 2 | 100 | PCS | ACETYLENE CUTTING TIP, BRAND: VICTOR, SIZE 1-3-101, TYN:0330-0005 *RECEIVED SIZE: 3-1* | 70076 | CUTTING SIZE, BUT RECEIVED |
| 3 | 70 | PCS | ACETYLENE CUTTING TIP, BRAND: VICTOR, SIZE 1-3-101, TYN:0330-0005 | 70076 | |
| 4 | 10 | PCS | WELDING SLEEVES SIZE: X-LARGE | 70076 | |
| 5 | 10 | PCS | WELDING SLEEVES, SIZE: LARGE | 70076 | |
| 6 | 10 | PCS | WELDING SLEEVES, SIZE: MEDIUM | 70076 | |
| 7 | 70 | PCS | HEAD TIE, WELDER GREEN (HEAVY LEVEL DOES) TYPE | 70076 | |
| 8 | 60 | PCS | APRON 4x8 | 70076 | |
| 9 | 30 | PCS | GLOVES, WELDING, TILLMAN, 750L SIZE: LARGE | 70076 | |
| 10 | 24 | PCS | KNEE PADS (ALL CUSHION WITH HARD CAP) | 70076 | |
| 11 | 5 | PCS | FACESHIELD, WELDING, WATER TYPE (ADJUSTABLE) | 70026 | RECEIVED IN EACH |
| 12 | 30 | PCS | for welding hood) FILTER PLATE (DARK LENS) SIZE: 2"x4 1/4", SHADE 10 | 70076 | |
| 13 | 10 | PCS | GLASS MAGNIFYING LENS, SIZE 2"x4 1/4" 70.0 MM x 108 MM, FOCAL POWER:150, BRAND: BEST WELDS Mfr. 936-150-150 | 70076 | |
| 14 | 90 | PCS | PAINT MARKER (GREASE PEN), COLOR: YELLOW, ARTLINE 400K | 70076 | |
| 15 | 2 | PCS | GRINDER, ELECTRIC, MAKE: BOSCH, MODEL: GWS 20-180H PROFESSIONAL, 220-240 V, 50/60 HZ, 8.5 A, SIZE: 180 MM M14, MADE IN CHINA 2013: SERIAL No. | 70076 | |
| 16 | 4 | PCS | GRINDER, ELECTRIC, MAKE: BOSCH, MODEL: GWS 7-115 PROFESSIONAL, 220-240 V, 50/60 HZ, 8.5 A, 720 W, SIZE: 115 MM M14, MADE IN CHINA 2013: | 70026 | |
| 17 | 10 | CAN | WELDING ELECTRODES, BRAND: LINCOLN ELECTRIC, SHIELD ARC HYP+, E-7010-P1, SIZE: 5/32"x 14", 14 MM x 350 MM), 50 LBS / 22.7 KGS PER CAN | 70075 | NOT RECEIVED |
| 18 | 100 | CAN | WELDING ELECTRODES, BRAND: LINCOLN ELECTRIC, SHIELD ARC HYP+, E-7010-P1, SIZE: 3/16"x 14" (4.8 MM x 350 MM), 50 LBS / 22.7 KGS PER CAN | 70075 | |
| 19 | 20 | CAN | WELDING ELECTRODES, BRAND: LINCOLN ELECTRIC, FLEETWELD 5P+, E-6010, SIZE: 1/8"x 14", 13.2 MM x 350 MM), 50 LBS / 22.7 KGS PER CAN | 70075 | |

| No. | Qty | Unit | Description | Code | |
|---|---|---|---|---|---|
| 20 | 57 | CAN | WELDING ELECTRODES, BRAND: LINCOLN ELECTRIC, FLEETWELD 5P+, E-6010, SIZE: 5/32" x 14", Fil. MAX. 850MM, 50 LBS/21.7 KGS PER CAN | 70078 | |
| 21 | 150 | PCS | DISC, CUTTING, SIZE: 167 x 3 x 22 MM (7" x 5/16" x 7/8"), MAX. 80 M/S, 8500 RPM, BRAND: KRONENFLEX ART.No.289001 | 70078 | |
| 22 | 1000 | PCS | DISC, CUTTING, SIZE 230 x 3 x 22.2 MM (9" x 1/8" x 7/8"), SPEED 80 M/S, 8500 RPM, BRAND: EURO STAR - ARGOLD | 70078 | |
| 23 | 200 | PCS | DISC, GRINDING SIZE: 180 x 6 x 22.2 MM (7" x 1/4" x 7/8"), METAL STEEL ACIER, SPEED 80 M/S, RPM 8500, BRAND: EURO STAR - ARGOLD | 70078 | |
| 24 | 200 | PCS | DISC CUTTING, SIZE: 100 x 6 x 16 MM (4" x 3/4" x 7/8"), SPEED 80 M/S, RPM 15,300, BRAND: DNL GRINGO, SUPERCUT, No. A3 30R-BR | 70078 | |
| 25 | 500 | PCS | DISC CUTTING, SIZE: 100 x 3 x 16 MM (4" x 1/8" x 7/8"), SPEED 80 M/S, RPM 15,300, BRAND: DNL GRINGO, 30 CUT, No: A3 30R-BF | 70078 | |
| 26 | 1 | PCS | KEYLESS BAND, STAINLESS STEEL, STEEL INOX 304 (AISI) MAKE: MATHEY DEARMAN, LATCH TYPE STANDARD, PART No. 05-0804-011 | 70478 | |
| 27 | 1 | PCS | BAND CRAWLER WITH 10 FT. 7.2 T MTR FLEX DRIVE CABLE, MAKE: MATHEY EARMAN, PART No. 05-0116-005 | 70478 | |
| 28 | 1 | PCS | MACHINE TORCH, MAKE: VICTOR, MODEL: MT210A (LONG MACHINE TORCH) MATHEY DEARMAN PART No. 05-0200-002 | 7057B | |
| 29 | 1 | PCS | BRA TORCH ANGLE ADAPTOR, MAKE: VICTOR, MATHEY DEARMAN PART No. 05-0800-003 (SWIVEL HEAD TO FIT ON ABOVE MACHINE TORCH) | 70478 | |
| 30 | 6 | PCS | ACETYLENE CUTTING TIP (BUTTON TIP), MAKE: VICTOR, PART No. 1-1-101 (GES #1), MATHEY DEARMAN PART No.05-0301-002 | 50478 | |
| 31 | 10 | PCS | NIPPLE, GALVANIZED, SIZE 3/4" x 6" LONG, SCH 40, NPT, BOTH | 70478 | |
| 32 | 4 | PCS | NIPPLE GALVANIZED, SIZE 2 1/2" x 6" LONG, NPT, SCH 40, (THIS ITEM AVAILABLE FEW PARTS) | 70478 | |
| 33 | 4 | PCS | COUPLING, FULL BAND, GALVANIZED, SIZE 21/2" NPT, STD. LENGTH, 300 PSI MAX. | 70478 | |
| 34 | 2 | PCS | REDUCER COUPLING, FULL REDUCER, GALVANIZED, 2 1/2" x 2", NPT, 300 PSI MAX. | 70478 | |
| 35 | 12 | PCS | TEE, EQUAL, GALVANIZED, SIZE 3 1/2", NPT, 600 PSI MAX. | 70478 | |
| 36 | 4 | PCS | TEE, EQUAL, GALVANIZED, SIZE 3 1/2", NPT, 600 PSI MAX. | 70478 | |
| 37 | 4 | PCS | PLUG, HEX HEAD, GALVANIZED, SIZE 3 x 6", NPT, 300 PSI MAX. | 70478 | |
| 38 | | PCS | CAP, GALVANIZED, SIZE 3 1/2", NPT FOR THREAD | 70478 | |
| 39 | 1 | PCS | SET OF REDUCER BUSHINGS, GALVANIZED, 30 PC FROM SIZE 1 1/2" TO 1/4", NPT, 600 PSI MAX. | 70478 | |
| 40 | 1 | PCS | NIPPLE, STAINLESS STEEL (INOX), SIZE 3 x 2" x 6" LONG, NPT, SCH. 40 | 70478 | |
| 41 | 1 | PCS | PRESSURE GAUGE, LIQUID FILLED, RANGE 0 - 400 PSI, & 1/2" DIA. FACE, 1/4" NPT, BOTTOM CONNECTION | 7047B | |
| 41 | 2 | PCS | IMPACT ADAPTOR SOCKET, SIZE 1.5" x 3/4" x 41 M SQUARE DRIVE | 70478 | |
| 42 | 1 | DRUM | ENGINE OIL, MOBIL DELVAC MX 15W -40, 208 LTRS/DRUM | 70480 | |
| 43 | 1 | PCS | PLATE, MILD STEEL, ASTM A36SN, SIZE: 4 FT. x 8 FT. x 2" THICK | 70481 | |

NOT RECEIVED

NOT RECEIVED

REJECTED N REPLACE

REJECTED A REPLACE

REJECTED A REPLACE

REJECTED N REPLACE

REJECTED A REPLACE

REJECTED N REPLACE

NOT RECEIVED

RECEIVED 3PM N RETURNED SOA

Invoice
0163

EX EA 2



EX EA 2

Ranger Subsea (Nig) Ltd
Old Lumbridge Avenue
Olku Epme, M?
Lagos, Nigeria
RC 1190147

January 22ᵈ, 2018

The Managing Director,
Fortune Global Shipping
& Logistics Limited
15, Fatai Irawo Street,
Ajao Estate,
Lagos,
Nigeria.

This is the document referred
to the Oath of E. Ayensu
and marked .......OU.....sworn at
Accra this .LT. day of .Cat. 20 /S
before me.

Commissioner for Oaths

ATT: Eno Gpah

Dear Sir,

We hereby confirm and acknowledge our indebtedness to your company in the
sum of NGN 355,762,702.87 (Three Hundred Fifty Five Million, Seven Hundred
Sixty Two Thousand, Seven Hundred Two Nigerian Naira and Eighty Seven
Kobo, only) and USD 1,913,621.81 (One Million, Nine Hundred Thirteen
Thousand, Six Hundred Twenty One and Eighty One Cents) being debt, as at
January 22ᵈ, 2018, for services performed for Ranger Sub-Sea, Nigeria Limited,
in respect of Shell SPDC FYIP, Chevron, ConOil and Support projects.

This letter is intended to assure FGS that subject receivable is irrevocable and
payable as committed.

Ranger has additional construction project in Nigeria, with substantial value and
look forward to working with and expect FGS continuous service support in that
regard.

Yours Faithfully,





EL EA3

**Fortune Global**
Shipping & Logistics Ltd.

15, Folai Irawo Street, Ajao Estate, Lagos.

t: +234 (1) 7617260,
m: +234 8149687490, +234 9080255796
e: info@fglobalshipping.com
w: www.fglobalshipping.com

OUR REF: FGSL/RAN/2018/0711.




**FortuneGlobal**
*TRUST TO DELIVER*

JULY 11, 2018.

The Managing Director,
Ranger Subsea Nigeria Limited
D93 Landbridge
Oniru Estate
Victoria Island
Lagos.

Dear Sir,

RANGER SUBSEA
RECEIVED
11 JUL 2018
NIG. LTD.

this is the document refered
to the Oaths of ...G. Amponsah
and marked ...EA3.....sworn at
Accra this ........ day of .... 20 /4
before me...........................

Commissioner for Oath

## DEMAND FOR PAYMENT OF OUTSTANDING INVOICES

We refer to our many prior correspondences via email, particularly your letter of debt confirmation dated January 22, 2018 on the above subject.

As you can see from our statements of account to you, your current outstanding position with Fortune Global Shipping & Logistics Ltd since then been as follows:

|  | US Dollar | Nigerian Naira |
|---|---|---|
|  | $ 1,991,870.81 | NGN 385,033,218.49 |

All your promises including the weekly payment of $25,000 (Twenty-Five Thousand US Dollars) on account of old debts and immediate payment for current transactions were never kept.

Consequently, we regret to inform you that your non-compliance with the terms of your promises and high default charge on the loan with SKYE bank in respect of Ranger Subsea Contracts has left us with no choice but to give you 21 days to pay up all your outstanding and indebtedness to Fortune Global Shipping & Logistics Ltd.

Should you require any clarification, the undersigned is at your disposal at any time.

Thank you for your attention, understanding and cooperation in this matter.

Yours faithfully,
For: Fortune Global Shipping & Logistics Ltd

JUDE NGWABA
HEAD, COMMERCIAL

FRANCIS OKOYE
RECEIVABLES MANGER

**PORT HARCOURT**
428 Trans Amadi Industrial Layout
Port Harcourt Rivers State
Tel: +234(0)84667345

**WARRI**
Suites 3&4 Notley Plaza
Shell Moo Gate, Ogunu
Worri, Delta State
Tel: +234(0)8100814489

**USA**
Fortune Global Shipping & Logistics (USA) Inc.
Suite 382, 16800 Imperial
Valley Drive, Houston,
Tx 77056, USA
Tel: +1 281-847-3475









RC: 662247

Ex EA3

Adeniran Ogunsanya Branch
81, Adeniran Ogunsanya Street,
Surulere, Lagos State, Nigeria.
Tel: 08029075149
e-mail: info@skyebankng.com
www.skyebankng.com



Skye Bank
RC 142191

December 19th, 2017

The Managing Director
Ranger Offshore
D93 Landbridge Avenue
Oniru Estates, V.I.
Lagos, Nigeria

Attention: Ken Herbert/Bilam Lan

Dear Sir,

## OUTSTANDING INDEBTEDNESS OF FORTUNE GLOBAL SHIPPING TO SKYE BANK

We are constrained to write to you on the above subject after repeated appeals, demands and efforts have been made on the settlement of FGSL's indebtedness to Skye Bank without success.

You will recall that the relationship between FGSL and Skye Bank was predicated on the Receivables of Rangers Subsea, as the main counterparty in the Invoice Discounting Facility(IDF) granted to FGSL.

We therefore wish to bring to your notice the long outstanding balance due from FGSL which have now been attributed to the inability of Ranger Subsea to meet up their obligations to FGSL. This outstanding balance is currently in excess of $900,000.

Also, recall that we have severally in the past emphasized the need for you to ensure your obligations with FGSL are effectively discharged to enable liquidation of FGLS's obligations to the bank. This led to several meetings between Mr. Ken,Chris Guinta and Skye Bank management all to no avail. This was also responsible for the several letters by you to us, some of which were signed by Chris Guinta, expressing your willingness to make payment on your due balances to FGSL.

Suffice to say that despite these letters, not much traction has been recorded in this account, largely due to your continued default in meeting your obligations to FGSL. Consequently, we are both motivated and compelled to making this subtle demand for you to find an urgent way to discharge your obligations to FGSL for on-payment to Skye Bank. The Central Bank of Nigeria, has recently hinted of a risk based review of Banks' loans portfolio, which shall necessitate that additional allowances are made for impairment on the book values of the banks' receivables. We are certain that FGSL's indebtedness will qualify for additional provision and this will further affect the capital adequacy of the bank if no positive and urgent actions are taken in this regard.

In order to avert the consequences of any CBN intervention on this indebtedness, it is our opinion that you treat this indebtedness as top urgent and accord it a priority attention.

Directors:
Muhammad K. Ahmad, OON (Chairman), Adetokunbo M. Abiru (GMD/CEO), Innocent C. Ike (ED), Abdullahi S. Mohammed (ED),
Austin Jo-Madugu, Olu Odugbemi, Abdullahi Markarfo Umar, Bala G. Watawa (Non-Executive Directors)



**Justification**

• The continued outstanding of this indebtedness may lead to its classification by the CBN. Where this happens, Ranger may be blacklisted with the consequent placing a vendor restriction on the company.

• The invoices under the IDF arrangement with FGSL, were duly acknowledged and confirmed from your local office in Nigeria, and signed by your Felix.

• We further confirm that if the outstanding is not settled within 14 days from now, it will warrant that in addition to the current listing of FGSL in the Credit Bureau, FGSL and Ranger shall be recommended to the CBN for stiffer sanctions which will fundamentally impact negatively on the credit worthiness of Ranger Subsea as a counterparty for and loan transactions in Nigeria.

In view of the above, we call on you to make good your earlier promises on your willingness to settle your indebtedness to FGSL as further delay may no more be palatable.

Yours faithfully,
For: Skye Bank Plc

**LANRE AJIBOYE**
**RELATIONSHIP OFFICER**

**MICHAEL ITEYE**
**BUSINESS DEVELOPMENT MANAGER**





IN THE SUPERIOR COURT OF JUDICATURE
IN THE HIGH COURT OF JUSTICE
(COMMERCIAL DIVISION)
ACCRA – A. D. 2018



**SUIT NO: CM/RPC/0641/2018**

FORTUNE GLOBAL SHIPPING & LOGISTIC LTD. = PLAINTIFF

VS:

1. THE VESSEL DLB SEA HORIZON        =        DEFENDANTS
2. THE MASTER OF THE VESSEL DLB SEA HORIZON.
3. THE OWNERS OF THE VESSEL DLB SEA HORIZON

(SGD.)                    & 7 OTHERS.

SAMUEL K. A. ASIEDU, J.
JUSTICE OF THE HIGH COURT.

...............................................................................

**ORDER FOR SERVICE OUT OF
JURISDICTION**

----------------------------------------------------------------------

UPON READING the Affidavit of ELIJAH AMPONSAH, a litigation Clerk with Alliance Partners, located on the 2nd floor of the Tower Block of the SSNIT Pension House, Accra filed on the 19th day of September, 2018 in support of Motion Ex-parte for Leave to issue Writ of Summons and Statement of Claim and serve notice of same out of Jurisdiction;

AND UPON HEARING DR. KOFI MBIAH Esq., with him BENJAMIN QUORNOOH Esq., Counsel for and on behalf of the Plaintiff/Applicant herein;

IT IS HEREBY ORDERED that Leave is granted the Applicant to serve Notice of the Writ of Summons and Statement of Claim on the Defendants by Courier at the following address:

1. Ranger Subsea Nigeria Ltd
   D93 Landbrige Avenue
   Oniru Estate, Victoria Island,
   Lagos State, Nigeria.

2. Suntx Capital
   Two Lincoln Centre Suite 1000,
   5420 LBJ Freeway,
   Dallas Texas 7520, USA.

3. Ranger Offshore USA INC
   10370 Richmond Avenue,

1

THIS IS EXHIBIT / DOCUMENT
MARKED.......... REFERRED TO
THE AFFIDAVIT SWORN AT ACCRA
THIS.......... DAY OF......OCT..20....

BY..........
BEFORE ME

COMMISSIONER FOR OATH

CERTIFIED TRUE COPY

REGISTRAR
HIGH COURT
COMMERCIAL DIVISION

Suite 1000,Houston Texas 77042,UAS.

4. Technixs Oilfield Support Ltd.
   Technixs Base Beside NBTC,
   Ovwian Off Warri Aladja Expressway,
   Ovwian Warri, Delta State, Nigeria.

5. Wag SPV 1
   5420 LBJ Freeway 1000,
   Dallas Texas, USA.

IT IS FUTHER ORDERED that the Defendants shall enter appearance within 10 days from the date of receipt of the Notice of the Writ of Summons and Statement of Claim.

GIVEN UNDER MY HAND AND THE SEAL OF THE
HIGH COURT OF JUSTICE, (COMMERCIAL
DIVISION)
ACCRA THIS 20ᵀᴴ DAY OF SEPTEMBER, 2018.

(SGD.)
MR. STEPEHN AFOTEY
R E G I S T R A R

s.a.a.
CERTIFIED TRUE COPY

.........................REGISTRAR
HIGH COURT
COMMERCIAL DIVISION, LLC-ACCRA

2



| Document Title | Master Service Agreement (VENDOR) | | |
|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | |
| Revision Date | February 17, 2010 | Revision No. | 004 | Page 1 of 22 |



## MASTER SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT ("Agreement"), is made and entered into this 20th day of August, 2014, by and between RANGER SUBSEA NIG LTD ("RANGER"), a corporation organized and existing under the laws of Nigeria, and Fortune Global Shipping & Logistics Ltd ("SUB-CONTRACTOR"), a corporation/partnership/proprietorship organized and existing under the laws of Nigeria, together referred to as "The Parties".

In this agreement, RANGER is meant to include each of its subsidiary, affiliated, parent or related companies.

RANGER is engaged in the business of performing diving and marine construction services and in the course of such activity, regularly and customarily enters into contracts with independent sub-contractors to perform work and/or provide services, equipment, machinery, materials or supplies or where Ranger supplies services, equipment, machinery, materials or supplies to a sub-contractor, all of which is defined to be the Work ("Work").

SUB-CONTRACTOR is interested in performing Work for RANGER and represents that it has adequate equipment in good working order and fully trained personnel capable of efficiently and economically performing such Work.   Additionally, RANGER may be asked by SUB-CONTRACTOR to provide equipment, supplies, vessels, machinery, service, or materials to SUB-CONTRACTOR.  RANGER represents that has the equipment, vessels, machinery and materials in good working order with fully trained personnel capable of efficiently handling the Work.

NOW, THEREFORE, IN CONSIDERATION of the mutual promises, conditions, terms and agreements contained in this Agreement, the sufficiency of which is hereby acknowledged, the parties hereto mutually agree as set forth below:

I.    **AGREEMENT**

    a.    The contract between the parties with respect to any Work to be performed shall consist of the Agreement and any documents issued pursuant to the Agreement and/or documents reflecting any agreements between the Parties regarding work to be performed in connection with the Agreement  (hereafter, the Agreement and any documents issued in connection with the Agreement and/or work to be performed in connection with the Agreement shall be collectively referred to as the "Contract").

    b.    In the event of a conflict between the Agreement and any documents issued in connection with the Agreement and/or documents reflecting any agreements between the Parties regarding work to be performed in connection with the Agreement, the provisions of the Agreement shall govern over the conflicting terms of any other documents.

THIS IS EXHIBIT DOCUMENT
MARKED............ REFERRED TO
THE AFFIDAVITS SWORN AT ACCRA
THIS.........DAY OF......20 18

BY.................
BEFORE ME

COMMISSIONER FOR OATH

| Document Title | | Master Service Agreement (VENDOR) | | | |
|---|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 3 of 23 | |

connected with its performance hereunder. SUB-CONTRACTOR warrants that it is an expert in the work it will perform, that its employees and agents have been trained to follow all applicable laws, rules and regulations and work safely, and that all of its equipment has been thoroughly tested and inspected and is safe, sufficient and free of any defects, latent or otherwise. SUB-CONTRACTOR acknowledges that RANGER will rely upon these representations and warranties. SUB-CONTRACTOR agrees that it will not knowingly permit any employee of RANGER to own an interest in SUB-CONTRACTOR or to derive any economic benefit with respect to any work or service performed by SUB-CONTRACTOR hereunder.

5.   **EQUIPMENT, MATERIALS AND SUPPLIES PROVIDED BY SUB-CONTRACTOR**

SUB-CONTRACTOR shall furnish, operate and maintain at its own risk, cost and expense, all equipment, supplies and materials specified in the Contract or which may be necessary to perform the Work.

6.   **COMPENSATION, INVOICING AND PAYMENTS**

a.   SUB-CONTRACTOR shall be compensated as provided by mutual agreement in writing, between SUB-CONTRACTOR and RANGER.

b.   Within 15 days after the end of each calendar month, SUB-CONTRACTOR shall send to the office of RANGER for which the Work was performed an invoice or invoices covering charges under the Agreement for the previous calendar month. If the parties so agree in writing, invoicing may be on a job basis in lieu of monthly invoicing. Invoices shall be submitted in such form and accompanied by such certification and documentation as RANGER may request, including but not limited to:

i.    the dates and hours labor was employed in performing the Work;

ii.   the types and qualities of materials or supplies furnished by SUB-CONTRACTOR and utilized in the Work;

iii.  the dates and hours equipment or machinery was employed in performing the Work.

c.   Within thirty (30) days of receipt of each invoice at said office, RANGER shall pay or cause to be paid, the approved amount of SUB-CONTRACTOR's invoice.

| Document Title | Master Service Agreement (VENDOR) | | | |
|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 5 of 23 |

ii.     Employer's Liability Insurance with limits of not less than $1,000,000 per occurrence covering injury or death to any employee.

iii.    Comprehensive General Liability Insurance on an occurrence basis, including contractual liability and products liability coverage, insuring the indemnity obligations set forth in Article 9 of the Agreement, with limits of not less than $1,000,000 applicable to bodily injury, sickness or death in any one occurrence and $1,000,000 for loss of or damage to property in any one occurrence. If the performance of the work requires the use of watercraft, SUB-CONTRACTOR shall require its insurer to delete any "watercraft exclusion" in the policy.

iv.     Automobile Liability Insurance covering owned, non-owned, hired and all vehicles used by SUB-CONTRACTOR, with limits of not less than $1,000,000 applicable to bodily injury and $1,000,000 for loss of or damage to property in any one occurrence.

v.      Watercraft Insurance if the performance of the Work requires the use of Watercraft. SUB-CONTRACTOR shall carry or require the owner of the Watercraft to carry Hull and Machinery Insurance, including collision liability, in the amount not less than the market value or replacement value of the watercraft and its equipment, whichever is greater; and Protection and Indemnity Insurance in an amount not less than $1,000,000. If SUB-CONTRACTOR charters any watercraft, SUB-CONTRACTOR shall provide, or require the owners of such watercraft to carry, Marine Operator's/Charter's Legal Liability Insurance with limits of not less than $1,000,000. All primary and excess Protection and Indemnity and Hull and Machinery Insurance shall be endorsed 1) to provide full coverage to RANGER Group as additional insured without limiting coverage to liability "as owner" of the vessel and to delete any "as owner" clause and any other language purporting to limit coverage to liability of an insured "as owner" of the vessel, and 2) to delete any language limiting coverage for RANGER Group in the event of the applicability of any limitation of liability statute.

vi.     Excess Liability Insurance over that required in paragraphs 8(a)(i), (ii), (iii), (iv) and (v) with minimum limits of $5,000,000 and specifically including SUB-CONTRACTOR's contractual liability.

vii.    Aircraft Insurance if the performance of the Work requires the SUB-CONTRACTOR to furnish aircraft, including helicopters. SUB-CONTRACTOR shall carry, or require the owners of such aircraft to carry: (1) All Risks Hull Insurance in an amount equal to the replacement value of the aircraft, and (2) Aircraft Liability Insurance covering bodily

| Document Title | Master Service Agreement (VENDOR) | | | |
|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 7 of 23 |

RANGER, its subsidiaries and their agents, employees, officers, invitees, servants, or other sub-contractors. No "other insurance" or "cover elsewhere" provisions shall be applicable to RANGER, its subsidiaries or affiliated companies, customers, or clients; or any of their insurers.

i.   Any and all deductibles in the above-described insurance policies shall be assumed by, for the account of, and at SUB-CONTRACTOR's sole risk. SUB-CONTRACTOR represents and warrants that it has the financial means to meet its financial obligations under this Agreement and any Contract.

j.   In the event SUB-CONTRACTOR is a self-insurer and RANGER has consented to SUB-CONTRACTOR being a self-insurer as to any one or more of the risks as to which coverage is herein required, evidence of such consent must be in writing and approved by a representative of RANGER authorized to enter into such consent agreement.

**9.   RISK ALLOCATION AND INDEMNITY**

a.   SUB-CONTRACTOR HEREBY AGREES TO RELEASE, HOLD HARMLESS, DEFEND AND INDEMNIFY RANGER AND ANY OF ITS PARENT, SUBSIDIARY, AFFILATED OR RELATED COMPANIES, CUSTOMERS, CLIENTS, PARTNERS, CO-OWNERS, CONTRACTORS, AND RANGER'S OTHER SUB-CONTRACTORS OF EVERY TIER (OTHER THAN THE SUB-CONTRACTOR EXECUTING THIS AGREEMENT AND ITS OTHER SUB-CONTRACTORS OF EVERY TIER WHICH ARE HEREAFTER REFERRED TO COLLECTIVELY AS "SUB-CONTRACTOR'S   SUB-CONTRACTORS"),   AND   THE RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SERVANTS, HEIRS, RESPRESENTATIVES, SUCESSORS AND ASSIGNS OF ALL OF THE FOREGOING (COLLECTIVELY REFERRED   TO   THROUGHOUT   THIS   CONTRACT   AS "RANGER   GROUP"),   IN   EACH   AND   EVERY   CASE, INCLUDING ANY CASE IN WHICH AN INDEMNITEE HEREUNDER MAY BE ALLEGED OR PROVEN TO HAVE BEEN NEGLIGENT (INCLUDING BUT NOT LIMITED TO ACTIVE,   PASSIVE,   SOLE,   JOINT,   CONCURRENT, COMPARATIVE, AND CONTRACTUAL), OR OTHERWISE LEGALLY LIABLE (WITH OR WITHOUT FAULT OR WHETHER STRICTLY LIABLE OR RESPONSIBLE FOR ANY

| Document Title | Master Service Agreement (VENDOR) | | |
|---|---|---|---|
| Document No. | ROI-RM-CR-MSA-0089-003 | | |
| Revision Date | August 17, 2014 | Revision No.  00 | Page 9 of 23 |

WHEN, OR WHERE SUCH INJURY, ILLNESS, DISEASE OR DEATH OCCURS.

b.  RANGER HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS SUB-CONTRACTOR, AND ITS AUTHORIZED SUB-CONTRACTORS, AND ITS AND THEIR OFFICERS, DIRECTORS, AND EMPLOYEES (HEREINAFTER CALLED "SUB-CONTRACTOR GROUP") IN EACH AND EVERY CASE, INCLUDING ANY CASE IN WHICH AN INDEMNITEE MAY BE ALLEGED OR PROVEN TO HAVE BEEN NEGLIGENT (INCLUDING BUT NOT LIMITED TO ACTIVE, PASSIVE, SOLE, JOINT, CONCURRENT, COMPARATIVE, AND CONTRACTUAL), OR OTHERWISE LEGALLY LIABLE (WITH OR WITHOUT FAULT OR WHETHER STRICTLY LIABLE OR RESPONSIBLE FOR ANY UNSEAWORTHINESS OR DEFECT, WHETHER OR NOT PRE-EXISTING EXECUTION OF THIS CONTRACT), FROM AND AGAINST ANY AND ALL CLAIMS DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THE FOLLOWING:

1.  ALL LOSS OF OR DAMAGE TO EQUIPMENT OR PROPERTY OF RANGER, DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THE OPERATIONS UNDER THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, ANY LOADING OR UNLOADING, INGRESS OR EGRESS, CARGO OPERATIONS, AND/OR THE PRESENCE OF ANY INDIVIDUAL ON ANY VESSEL, PLATFORM OR OTHER PREMISES OR AT ANY WORKSITE, REGARDLESS OF HOW, WHEN, OR WHERE SUCH DAMAGE OR DESTRUCTION OCCURS; AND

2.  ANY PERSONAL OR BODILY INJURY, ILLNESS, DISEASE, OR DEATH TO EMPLOYEES OF RANGER ARISING OUT OF OR IN CONNECTION WITH THE OPERATIONS UNDER THIS CONTRACT, INCLUDING, WITHOUT LIMITATION, ANY LOADING OR UNLOADING, INGRESS OR EGRESS, CARGO OPERATIONS, AND/OR THE PRESENCE OF ANY

| Document Title | | | | |
|---|---|---|---|---|
| | Master Service Agreement (VENDOR) | | | |
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 11 of 23 |

READ THIS AGREEMENT IN ITS ENTIRETY AND IS FULLY INFORMED AND HAS FULL NOTICE AND KNOWLEDGE OF THE TERMS, CONDITIONS AND AFFECTS OF THIS AGREEMENT, THAT IT HAS HAD THE OPPORTUNITY TO OR HAS BEEN REPRESENTED BY LEGAL COUNSEL OF ITS CHOICE THROUGHOUT THE NEGOTIATIONS PRECEDING ITS EXECUTION OF THIS AGREEMENT AND HAS RECEIVED THE ADVICE OF ITS ATTORNEY IN ENTERING INTO THIS AGREEMENT, AND THAT IT RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS AGREEMENT (INCLUDING WITHOUT LIMITATION, THE TERMS OF ARTICLE 9 RESULT IN ONE PARTY ASSUMING THE LIABILITY INHERENT IN SOME ASPECTS OF THE TRANSACTION AND RELIEVING THE OTHER PARTY OF ITS RESPONSIBILITY FOR SUCH LIABILITY.) EACH PARTY HERETO AGREES AND COVENANTS THAT IT WILL NOT CONTEST ON ANY BASIS THE VALIDITY OR ENFORCEABILITY OF ANY EXCULPATORY PROVISIONS OF THIS AGREEMENT INCLUDING, WITHOUT LIMITATION, ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISION OR THAT THE PROVISION IS NOT "CONSPICUOUS."

f.   SUB-CONTRACTOR SHALL RELEASE, HOLD HARMLESS, DEFEND AND INDEMNIFY RANGER GROUP FROM AND AGAINST ANY AND ALL CLAIMS (AS DEFINED IN SECTION 9(A)) FOR PROPERTY DAMAGE ARISING FROM POLLUTION, INCLUDING WITHOUT LIMITATION CONTROL AND REMOVAL THEREOF AND REMEDIATION OF THE PROPERTY, CAUSED IN WHOLE OR IN PART BY ANY NEGLIGENT ACT OR OMISSION, STRICT LIABILITY, UNSEAWORTHINESS OR OTHER FAULT OF SUB-CONTRACTOR OR ITS SUB-CONTRACTORS, WHETHER ACTIVE OR PASSIVE, IN PERFORMANCE OF ANY OPERATIONS OR JOB HEREUNDER INCLUDING CLAIMS ACTUALLY OR ALLEGEDLY CONTRIBUTED TO BY THE CONCURRENT NEGLIGENCE, STRICT LIABILITY, UNSEAWORTHINESS OR OTHER FAULT OF RANGER GROUP

| Document Title | Master Service Agreement (VENDOR) | | |
|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | |
| Revision Date | August 17, 2014 | Revision No.  004 | Page 13 of 23 |

DEMANDS AND CAUSES OF ACTION, OF EVERY KIND AND CHARACTER, WITHOUT LIMITATION, ARISING IN FAVOR OF OR MADE BY THIRD PARTIES, ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO OR LOSS OF THEIR PROPERTY RESULTING FROM ANY NEGLIGENT ACT, WHETHER SUCH NEGLIGENCE IS SOLE, CONCURRENT, CONTRIBUTORY, ACTIVE, PASSIVE, PRIMARY OR SECONDARY, OR WILLFUL MISCONDUCT OF ANY PERSON WITHIN THE SUB-CONTRACTOR GROUP. FOR THE PURPOSES HEREOF, "THIRD PARTY" MEANS ANY PARTY OTHER THAN (I) THE RANGER GROUP AND (II) THE SUB-CONTRACTOR GROUP.

j.  NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES ARISING FROM OR ARISING OUT OF THIS AGREEMENT OR ANY CONTRACT ENTERED INTO PURSUANT TO THIS AGREEMENT, OF ANY BREACH THEREOF, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT OR BUSINESS INTERRUPTIONS, HOWEVER SAME MAY BE CAUSED.

k.  THE INDEMNITY OBLIGATIONS CONTAINED IN THIS AGREEMENT OR ANY CONTRACT WITH RESPECT TO THE INJURY TO OR DEATH OF ANY PERSON IN THE RANGER GROUP AND SUB-CONTRACTOR GROUP OR DAMAGE TO OR LOSS OF THE PROPERTY OF ANY MEMBER IN THE RANGER GROUP OR SUB-CONTRACTOR GROUP SHALL BE SUPPORTED BY LIABILITY INSURANCE COVERAGE TO BE FURNISHED BY BOTH PARTIES IN EQUAL AMOUNTS AS SET FORTH IN ARTICLE 8 ABOVE.

10.  **WARRANTIES – LABOR, WORK, EQUIPMENT, MATERIAL SUPPLIES AND SERVICES**

a.  In providing and/or performing the Goods and Services herein contemplated SUB-CONTRACTOR warrants that it is an independent contractor, with authority to control and direct the performance and safety to the details of its work, RANGER being interested only in results obtained, but the Goods and Services contemplated herein shall meet the approval of RANGER. SUB-CONTRACTOR

| | Document Title | | | | |
|---|---|---|---|---|---|
| ⭐ | | Master Service Agreement (VENDOR) | | | |
| | Document No. | RO1-PM-CR-MSA-0089-003 | | | |
| | Revision Date | August 17, 2014 | Revision No. | 004 | Page 15 of 23 |

e.  SUB-CONTRACTOR agrees that SUB-CONTRACTOR will disclose promptly and in writing to RANGER, any and all Inventions which SUB-CONTRACTOR or its sub-contractors, either alone or with others, may conceive or make, which inventions arise out of SUB-CONTRACTOR's providing Goods and Services for RANGER. SUB-CONTRACTOR and its sub-contractors agree to assign, and hereby assign, to RANGER or its nominee all Sub-Contractor's (and its sub-contractors) entire right, title and interest in and to all such inventions as were conceived or made with RANGER's participation. SUB-CONTRACTOR further agrees that, during the term of this contract or at any time thereafter, SUB-CONTRACTOR and its sub-contractors will, at the request of and expense of RANGER, execute all papers and perform all other lawful acts which RANGER may deem advisable for the purpose of protecting or maintaining the rights granted RANGER in this Section 10(e). SUB-CONTRACTOR warrants that its sub-contractors will agree to and comply with all obligations under this Section 10(e). SUB-CONTRACTOR's obligations under this Section (and those of its sub-contractors) shall survive termination of this contract.

f.  SUB-CONTRACTOR agrees that it will not photograph or otherwise record, and SUB-CONTRACTOR will instruct its employees not to photograph or record, any of RANGER's facilities or equipment unless prior written permission to do so is first obtained from RANGER. Also, SUB-CONTRACTOR will not, without RANGER's prior written permission, (1) disclose to any third party that SUB-CONTRACTOR is providing goods or services to RANGER, or (2) use RANGER's name or refer to RANGER's projects in any advertising or other promotion of SUB-CONTRACTOR's goods and/or services.

g.  SUB-CONTRACTOR warrants that it will not exclude or modify any express or implied warranties which would otherwise attach to all materials, equipment, or supplies furnished by RANGER, or to a production furnished by SUB-CONTRACTOR, or waive any remedy available to RANGER or SUB-CONTRACTOR as a consequence of any breach of such warranties.

h.  SUB-CONTRACTOR warrants that it is an expert in its field, that all work will be performed safely and in a good and workman like manner, that SUB-CONTRACTOR has adequate equipment in good working order in full compliance with legal requirements; that SUB-CONTRACTOR and its sub-contractors' personnel, have been trained by a qualified trainer in all applicable training; that SUB-CONTRACTOR'S personnel are fully trained and capable of efficiently and safely operating such equipment and performing services for RANGER; that SUB-CONTRACTOR shall provide all required personal protective equipment for the job including, but not limited to hard hat, safety eyewear, hard toe, slip resistant footwear meeting ANSI Z41-1983 specs; that

| Document Title | Master Service Agreement (VENDOR) | | |
|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 17 of 23 |

performance of this Agreement by any governmental agency and unemployment compensation insurance, old-age benefits, social security, or any other taxes upon the wages of SUB-CONTRACTOR, its agents, employees, and representatives. SUB-CONTRACTOR agrees to require the same agreements and be liable for any breach of such agreements by any of its sub-contractors.

b.   SUB-CONTRACTOR agrees to reimburse RANGER on demand for all such taxes or governmental charges, state or federal, that RANGER may be required or deemed, if necessary, to pay on account of employees of SUB-CONTRACTOR or its sub-contractors.  SUB-CONTRACTOR agrees to furnish RANGER with the information required to enable it to make the necessary reports and to pay such taxes or charges.  At its election, RANGER is authorized to deduct all sums so paid for such taxes and governmental charges from such amounts as may be or become due to SUB-CONTRACTOR hereunder.

## 12.   LAWS, RULES AND REGULATIONS

a.   SUB-CONTRACTOR agrees to comply with all laws, rules, and regulations, including but not limited to those relating to safety, health and the environment which are now or may become applicable to the Work or to operations covered by a Contract or arising out of the performance of such operations and SUB-CONTRACTOR shall defend, indemnify and hold RANGER harmless from any costs or expenses of whatever nature, including any fine or penalty resulting from SUB-CONTRACTOR's failure to comply with such laws, rules, or regulations.

b.   In the event any provision of this Agreement is inconsistent with or contrary to any applicable law, rule, or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule, or regulation and this Agreement as so modified, shall remain in full force and effect.

## 13.   FORCE MAJEURE

Except for the obligation to make payment for Work performed or goods delivered or other financial obligations due under this Contract, neither Party shall be liable for nonperformance under this Contract to the extent caused by circumstances beyond the control of the nonperforming Party including, but not limited to, governmental decrees, laws, acts of God, strikes or other concerted acts of workers, bomb threats, fires, floods, explosions, riots, war, and sabotage. The nonperforming Party shall diligently attempt to remove the cause(s) of the force majeure. If SUB-CONTRACTOR is affected by an event of force majeure, it shall notify Ranger in writing within forty-eight (48) hours of the occurrence and the extent to which the occurrence will impact SUB-CONTRACTOR's performance under this Contract. If SUB-CONTRACTOR does not give such notice, it may not claim force majeure as a defense.

| Document Title | Master Service Agreement (VENDOR) | | | |
|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 19 of 23 |

SUB-CONTRACTOR shall be responsible for an ongoing loss-prevention safety program during the performance of any work. SUB-CONTRACTOR shall indoctrinate each of its employees involved in the Work in such safety program prior to commencement of work. During the performance of work, SUB-CONTRACTOR shall monitor each of its employees' safety habits, shall conduct frequent safety meetings and shall perform routine safety inspections of operations, facilities and equipment used in the performance of the Work.

c.   SUB-CONTRACTOR shall, at its expense, provide SUB-CONTRACTOR's employees with all necessary protective clothing required at each location where the Work is being performed. Such protective clothing shall include, at a minimum, hard hat, nonslip safety boots, overalls, gloves, hearing protection, and industrial safety eye protection.

d.   SUB-CONTRACTOR shall take all reasonable and necessary precautions in the processing, handling, transportation and disposal of material, product, and waste generated by its operations and equipment.

e.   SUB-CONTRACTOR shall bear all costs and expenses of, and shall be primarily responsible for providing and arranging for, all medical care and medical evacuation of SUB-CONTRACTOR's employees. SUB-CONTRACTOR shall maintain sufficient contractual or financial arrangements for the medical evacuation of its personnel and shall establish and maintain its own medical evacuation plan as RANGER cannot guarantee transport. If requested, SUB-CONTRACTOR shall furnish RANGER a copy of its medical evacuation plan. In the event SUB-CONTRACTOR fails or refuses to perform its obligations under this Section 15(e), RANGER shall have the right but not the obligation to act on behalf of SUB-CONTRACTOR at SUB-CONTRACTOR's sole expense. RANGER assumes no responsibility or liability for the quality or effectiveness of any emergency medical care rendered under this Section 15(e) or for its inability to provide medical care and/or medical evacuation in a timely manner. SUB-CONTRACTOR SHALL, DEFEND, INDEMNIFY AND HOLD COMPANY HARMLESS with respect to any claim, demand, cost, expense, loss or liability resulting from the medical care and/or medical evacuation provided to SUB-CONTRACTOR's employees under this Section 15(e).

f.   If RANGER notifies SUB-CONTRACTOR of any noncompliance of this section, SUB-CONTRACTOR shall immediately make all reasonable efforts to correct the noncomplying condition. If SUB-CONTRACTOR fails to do so, RANGER may stop all or any part of the Work. This Work stoppage shall not be a basis for a claim by SUB-CONTRACTOR for extension of the Work schedule, additional compensation, or other damages. RANGER may terminate this Agreement immediately if SUB-CONTRACTOR fails to correct any noncompliance within seven (7) days following notice to SUB-CONTRACTOR.

| Document Title | Master Service Agreement (VENDOR) | | | |
|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 21 of 23 |

SUB-CONTRACTOR shall treat as confidential and shall not, without RANGER's prior written consent, divulge to any third-party or make any unauthorized use or disclosure of confidential or proprietary information of RANGER.

20.   **AUDIT**

SUB-CONTRACTOR shall maintain a true and correct set of records pertaining to its performance of all Contracts performed by SUB-CONTRACTOR. SUB-CONTRACTOR further agrees to retain all records pertaining to all Contracts for a period of not less than two (2) calendar years following the final billing for the Contract. Any representative or representatives authorized by RANGER may audit any and all such records of SUB-CONTRACTOR at SUB-CONTRACTOR's offices during normal business hours.

21.   **ASSIGNMENTS**

SUB-CONTRACTOR may not assign or sublet this Agreement or any Contract arising hereunder, in whole or in part, to any third party without the prior written consent of RANGER. This Agreement and each Contract arising hereunder shall inure to and be binding upon the successors and assigns of the parties hereto.

22.   **APPLICABLE LAW AND VENUE**

The interpretation and performance of this Agreement and each Contract hereunder shall be governed by and interpreted in accordance with the General Maritime Law, without regard to its rules on conflict of laws, and if the General Maritime law is inapplicable, Nigerian law shall apply. All disputes must be brought in Lagos, Nigeria and SUB-CONTRACTOR consents to jurisdiction therein.

23.   **NOTICES**

All notices required under this Contract will be properly made when delivered in person, or sent by certified mail (postage paid, return receipt requested), overnight courier service, or facsimile transmission to the addresses set forth below. Notices shall be effective when received by the addressee.

The notice addresses of RANGER and SUB-CONTRACTOR are as follows, unless changed by written notice:

|  | RANGER | SUB-CONTRACTOR |
|---|---|---|
| Name: | Ranger Subsea Nig Ltd | Fortune Global Shipping & Logistics Ltd |

| Document Title | | Master Service Agreement (VENDOR) | | |
|---|---|---|---|---|
| Document No. | ROI-PM-CR-MSA-0089-003 | | | |
| Revision Date | August 17, 2014 | Revision No. | 004 | Page 22 of 23 |

Address:                D93 Landbridge Avenue          15 Fatai Irawo Street, Ajao Estate.
                        Oniru Estate, V.I.             Lagos State. Nigeria
                        Lagos, Nigeria

Name        of          Ken Hebert, Managing           Eric Opah
Contact:                Director
Telephone No.:                                         Director
Facsimile No.:                                         Eric.opah@fgglobalshipping.com

E-Mail:                 k.hebert@RangerOffshoreInc.c
                        om

24.   **TIME OF THE ESSENCE**

      Time is the essence of this Agreement and of any Contract arising out of this
      Agreement.

25.   **SEPARABILITY**

      The invalidity or unenforceability of any provision of this Agreement shall not impair the
      validity or enforceability of any other provision.